1
2
3
4
5                       UNITED STATES DISTRICT COURT
6                           DISTRICT OF NEVADA
7                                  * * *

8   IN RE OCWEN LOAN SERVICING LLC         Lead Case: 3:16-cv-00200-MMD-WGC
    LITIGATION
9                                          Member Cases:
    This Document Relates to:             3:16-cv-00483-MMD-WGC
10                                         3:16-cv-00498-MMD-WGC
        ALL ACTIONS                        3:16-cv-00603-MMD-WGC
11
                                                        ORDER
12

13  I.    SUMMARY

14        The four consolidated cases before the Court assert similar claims under the Fair

15  Credit Reporting Act ("FCRA") to challenge a loan servicer's alleged practice of obtaining

16  consumer credit information without authorization after the loans had been discharged in

17  bankruptcy.[1] (ECF No. 47.) In each case, the loan servicer, Defendant Ocwen Loan

18  Servicing, LLC's ("Ocwen"), has moved to dismiss ("Motions") based on lack of subject

19  matter jurisdiction (*Marino*, ECF No. 23; *Horton*, ECF No. 18; *Farrin*, ECF No. 25;

20  *Hardin*, ECF No. 27.) The Motions all raise the same issue — whether impermissibly

21  obtaining a consumer's credit information under the FCRA results in a concrete harm for

22  purposes of Article III standing. Plaintiffs each filed responses to the Motions (*Marino*,

23  ECF No. 25; *Horton*, ECF No. 26; *Farrin*, ECF No. 37; *Hardin*, ECF No. 31) and Ocwen

24  filed replies in three of the cases (*Marino*, ECF No. 32; *Horton*, ECF No. 28; *Hardin*, ECF

25  No. 34).

26

27        [1]The lead case is 3:16-cv-00200-MMD-WGC ("*Marino*"). For citation purposes,
    the remaining member cases will be referred to as follows:3:16-cv-00483-MMD-WGC is
28  "*Horton*," 3:16-cv-00498 is "*Farrin*," and 3:16-cv-00603 is "*Hardin*."

The Court issued a minute order on February 10, 2017, (*Marino*, ECF No. 61) requesting supplemental briefing in light of a recently decided Ninth Circuit opinion, *Syed v. M-I, LLC*, 846 F.3d 1024(9th Cir. 2017), that addressed procedural standing and statutory damages under the FCRA. The Court has reviewed the parties' supplemental briefs (*Marino*, ECF Nos. 62, 65).

In addition, the parties have filed several motions to supplement. (*Marino,* ECF Nos. 54, 60, 63.) The Court has reviewed these motions as well as responses thereto (*Marino*, ECF Nos. 56, 64, 67). All three motions are granted pursuant to Local Rule LR 7-2(g).

For the reasons discussed below, the Motion in *Horton* is granted only with regards to the claim for negligent noncompliance with the FCRA. The Court will give Horton leave to amend to allege facts demonstrating a concrete injury and/or actual damages. The Motions in *Marino*, *Hardin*, and *Farrin* are denied.

## II.    BACKGROUND

Plaintiffs each bring a class action lawsuit against Ocwen based on almost identical factual allegations: each Plaintiff discharged in bankruptcy a prior loan that had been serviced by Ocwen, yet Ocwen continued, and possibly still continues, to obtain Plaintiffs' credit information from credit reporting agencies ("CRAs") without a legally permissible purpose and without Plaintiffs' authorization as required under the FCRA. *See* 15 U.S.C § 1681b. All Plaintiffs allege that Ocwen obtained their credit reports under false pretenses or knowingly without a permissible purpose, each willful violations under the statute. *See* §§ 1681n & 1681q.

Marino alleges that he discharged a mortgage loan that had been serviced by Defendant in Chapter 7 bankruptcy. (*Marino*, ECF No. 1 at 3.) After his relationship with Defendant ended, Marino did not seek credit of any type from Defendant, Defendant knew of the discharge of the loan, and Defendant obtained information from a CRA twice about Marino without his authorization. (*Id.*) Farrin's allegations are practically the same: Defendant knowingly accessed Farrin's credit report after his loan had been discharged

1   and did so without Farrin's authorization or a permissible reason as required under the

2   FCRA. (*Farrin*, ECF No. 1 at 3.)

3   Similarly, Horton asserts that his relationship with Ocwen was terminated after his

4   mortgage loan was discharged in bankruptcy. Horton also includes allegations that

5   Ocwen makes "batch" pulls of credit reports on a quarterly basis for "account review"

6   purposes, regardless of whether the consumer still maintains a relationship with them.

7   (*Horton*, ECF No. 13 at 4, 5.) Unique to Horton's complaint is a claim for negligent

8   noncompliance with the FCRA.

9   The complaint in *Hardin* presents similar but distinguishable factual

10  circumstances. While they similarly discharged a loan to secure a mortgage that

11  Defendant had serviced, the Hardins also allege that Defendant harassed them, invaded

12  their privacy, falsely reported their credit status, and violated their consumer protection

13  rights. (*Hardin*, ECF No. 2 at 2.) Defendant, however, is moving only to dismiss Count I

14  of their complaint —willful violation of the FCRA — which relates to the alleged

15  impermissible credit pulls conducted after discharge of the loan and after termination of

16  the Hardins' relationship with Ocwen. (*Hardin*, ECF No. 27-1 at 1.)

17  Ocwen's Motions assert that the Court lacks subject matter jurisdiction because a

18  legally impermissible pull of an individual's credit report does not give rise to a concrete

19  injury or actual damages that would give rise to Article III standing.

20  **III.   DISCUSSION**

21  **A.    12(b)(1) Standard**

22  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek

23  dismissal of a claim or action for a lack of subject matter jurisdiction. Dismissal under

24  Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege

25  facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic*

26  *Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984-85 (9th Cir.

27  2008). Because Plaintiffs are invoking the court's jurisdiction, they bear the burden of

28  proving that the case is properly in federal court. *See In re Ford Motor Co./Citibank*

1  *(South Dakota), N.A.,* 264 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors*

2  *Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Furthermore, federal subject matter

3  jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v.*

4  *United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

5        Lack of standing is a defect in subject matter jurisdiction and may be challenged

6  under Rule 12(b)(1). *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541

7  (1986). The standing doctrine has a constitutional and a prudential component. *Elk*

8  *Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (citing *Lujan v. Defenders of*

9  *Wildlife*, 504 U.S. 555, 559-62 (1992) (constitutional standing), and *Allen v. Wright*, 468

10  U.S. 737, 751 (1984) (prudential standing)). To satisfy the constitutional component —

11  the issue Ocwen raised in its Motions — a plaintiff must meet three requirements: (1) the

12  plaintiff must have suffered an injury in fact, (2) that is fairly traceable to the challenged

13  conduct of the defendant, and (3) it must be likely, as opposed to merely speculative,

14  that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. The

15  plaintiff bears the burden of establishing these elements, *FW/PBS, Inc. v. Dallas*, 493

16  U.S. 215, 231 (1990), and must allege sufficient facts to demonstrate that each element

17  has been met, *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

18        **B.**    **FCRA**

19        Congress enacted the FCRA in 1970 to protect consumer privacy by requiring

20  CRAs to ensure the accuracy of information contained in credit reports and to limit the

21  furnishing of those reports to statutorily enumerated purposes only. *See TRW Inc. v.*

22  *Andrews*, 534 U.S. 19, 23 (2001). The statute was created in response to "concerns

23  about corporations' increasingly sophisticated use of consumers' personal information in

24  making credit and other decisions." *Syed v. M-I, LLC et al.*, 846 F.3d, at 1037 (9th Cir.

25  2017) (citing the FCRA, Pub. L. 91-508, Section 602, 84 Stat. 1114, 1128). Given the

26  growing importance of consumer credit and consumers' lack of control over what

27  information is contained in their credit reports, the FCRA intends to provide statutory

28  protection for already recognized legal harms (albeit as applied to a new industry).

The FCRA provides that CRAs furnish consumer reports only under certain circumstances. Relevant to the Motions at issue here, CRAs may furnish consumer reports:

> (a)(3) To a person which [the CRA] has reason to believe —
>
>> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer or
>>
>> [. . .]
>>
>> (F) otherwise has a legitimate business need for the information —
>>> (i) in connection with a business transaction that is initiated by the consumer; or
>>> (ii) to *review an account* to determine whether the consumer *continues to meet the terms of the account*.

15 U.S.C. § 1681b(a)(3) (emphasis added).

Violation of § 1681b(a)(3) may occur in three ways. First, a consumer's credit information may be obtained under false pretenses:

> Any person who knowingly and willfully obtains information on a consumer from a reporting agency under false pretenses shall be fined until Title 18, United States Code, imprisoned for not more than 2 years, or both.

15 U.S.C. § 1681q. If a person is found to have obtained a credit report under false pretenses or knowingly without a permissible purpose, then the FCRA provides that a consumer may get "actual damages . . . or $1,000, whichever is greater" (§ 1681n(a)(1)(B)), as well as punitive damages if the court allows (§ 1681n(a)(2)).

Second, a person may be willfully noncompliant with a provision of the FCRA (for instance by obtaining a credit report without a legally permissible purpose). If the person is found to have willfully violated the statute, then the person is civilly liable for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000," § 1681n(a)(1), as well as punitive damages as the court deems appropriate, § 1681n(a)(2). Additionally, if civil liability is established under § 1681n or § 1681q, then a successful consumer may receive the costs of the action and reasonable attorney's fees. 15 U.S.C. § 1681n(3).

Third, a person may be negligently noncompliant with any provision of the FCRA. 15 U.S.C. § 1681o. In that event, the person must pay any actual damages sustained by the consumer as a result of the person's failure. 15 U.S.C. § 1681o(a)(1). Additionally, a successful consumer may receive the costs of the action as well as reasonable attorney's fees. 15 U.S.C. § 1681o(a)(2). As noted, only Horton brings a claim for negligent noncompliance.

### C.    Standing to Assert Claim for Willful Noncompliance with the FCRA

Ocwen relies on the Supreme Court's recent decision in *Spokeo v. Robins*, 136 S. Ct. 1540 (2016), to argue that Plaintiffs' allegations of "an unspecified invasion of privacy" resulting from alleged impermissible pulls of their credit reports is a mere "technical, procedural violation" of the FCRA and does not result in a concrete harm. (*See, e.g.*, *Marino*, ECF No. 23-1 at 2.) Plaintiffs counter that their allegations that Ocwen obtained credit information without a permissible purpose or written their consent as required under the FCRA demonstrate harm to a substantive right — invasion of their privacy — and not a mere procedural violation. (*See, e.g., Marino,* ECF No. 25 at 6.)

In order to establish injury-in-fact, Plaintiffs must show that they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "Particularity" requires that an injury affect a plaintiff in a "personal and individual way," *id.*, or that the plaintiff "personally suffer some actual or threatened injury," *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). On the other hand, an injury is "concrete" if it actually exists; that is, if it is real and not abstract. *Spokeo*, 136 S. Ct. at 1548. The Supreme Court has found that an intangible injury, although difficult to recognize, can still be considered to be "concrete." *Id.* at 1549 (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech), and *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). While "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing," *Raines*, 521 U.S.

at 820, n. 3, Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S. at 578. Thus, an intangible harm may constitute a concrete injury where both history and the judgment of Congress demonstrate a close connection to a harm traditionally found in English or American lawsuits. *Spokeo*, 136 S. Ct. at 1491 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-777 (2000)).

In *Spokeo*, Thomas Robins sued Spokeo, Inc., an alleged consumer reporting agency that operates a "people search engine," for publishing inaccurate information about him. 136 S. Ct. at 1542. On appeal, the Ninth Circuit Court of Appeals found that Robins had standing to bring suit against Spokeo. *See id.* at 1544-45. Specifically, the Ninth Circuit held that Robins had adequately alleged injury in fact because he stated that "Spokeo violated his statutory rights, not just the statutory rights of other people," and that "Robins's personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 1544. The Supreme Court reversed, finding the Ninth Circuit's standing analysis evaluated only particularization, not concreteness, and was therefore incomplete.[2] The Court observed that "not all inaccuracies [in a credit report] cause harm or present any material risk of harm." *Spokeo*, 136 S. Ct. at 1550. The Court identified as an example of a mere technical or "bare procedural violation," divorced from any other concrete harm, the reporting of an incorrect zip code in a consumer's credit report. 136 S. Ct. at 1550.

Ocwen relies on this example to argue that Plaintiffs' bare factual allegations of "invasion of privacy" resulting from the alleged impermissible pulls of Plaintiffs' credit reports do not meet the requirement of concrete harm. Ocwen also focuses on a lack of

---

[2]*Spokeo* does not hold, as Ocwen suggests, that a procedural violation cannot pose any risk of real harm to satisfy the requirement of concreteness. The Court did state that "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Spokeo,* 136 S.Ct. at 1550. However, the Court also clarified that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549.

1    alleged actual damages in Plaintiffs' complaints and, further, contends that Plaintiffs do

2    not and cannot claim any actual damages that resulted from Ocwen's pull of their credit

3    reports. (*Marino*, ECF No. 23-1 at 2-3.)

4        In *Syed v. M-I, Inc.*, Plaintiff Syed applied for a job with Defendant M-I. M-I

5    provided Syed with a disclosure release, informing Syed that his credit history could be

6    collected and used to make an employment decision, that by signing the disclosure

7    release Syed authorized M-I to procure his consumer report, and that by signing the

8    release Syed waived all rights to sue M-I and its agents for violations of the FCRA. *Syed*,

9    846 F.3d at 1038-39. Syed alleged that M-I's disclosure release failed to satisfy the

10   requirements under 1681b(b)(2)(A) of the FCRA because the statute requires that the

11   disclosure document consist "solely" of the disclosure and not include a liability waiver as

12   well. *Id.* at 1039. Syed sought statutory damages, punitive damages, attorney's fees and

13   costs for M-I's willful noncompliance of the FCRA.

14       The Ninth Circuit found that Syed alleged more than a bare procedural violation

15   when he asserted that the disclosure release improperly contained a liability waiver. *Id.*

16   at 1040. There is no actual harm resulting from such a violation nor did Syed assert that

17   he suffered one. But the Ninth Circuit determined that the disclosure requirement found

18   at § 1681b(b)(2)(A) of the FCRA "creates a right to privacy by enabling applicants to

19   obtain the report from the prospective employer[] and a concreate injury when applicants

20   are deprived of their ability to meaningfully authorize the credit check." *Id.* Thus, the

21   disclosure requirement extends two well-established consumer rights to the credit

22   bureau industry: a right to know if a prospective employer is accessing your confidential

23   credit information and a right for applicants to withhold permission to access that

24   information. *See id.* These rights address the concrete injury that results when

25   consumers are deprived of their ability to meaningfully authorize a credit check. *Id.* The

26   Ninth Circuit held that in providing a private right of action for violations under 1681b(b),

27   Congress recognized the harm that results to consumers when they do not give consent

28   to purported credit pulls, even when the reason for the pull is permissible under the

statute. In addition, the Ninth Circuit observed that, based on the plain language of the FCRA, "statutory and punitive damages are available under the FCRA only where a defendant willfully fails to comply with the statute" and that the FCRA allows actual damages for negligent violations but provides for statutory and punitive damages for willful ones. *Id.* at 1044, 1045.

The Ninth Circuit's reasoning applies here to support Plaintiffs' argument that Ocwen's alleged willful noncompliance with the FCRA results in concrete harm to a substantive right. The FCRA is clear that account review inquiries are permissible to determine whether the consumer *continues* to meet the terms of the account. 15 U.S.C. § 1681b(a)(3) The operative word in this provision is "continues," which indicates Congress recognized that once an individual terminated her relationship with a lender it was no longer permissible for the lender to access the account (precisely because the lender would have no reason for doing so). Given that the FCRA was enacted specifically to combat unnecessary and unwanted invasions of consumer privacy and maintain consumer confidentiality in the credit bureau industry, Congress enumerated and clearly established specific permissible purposes for a reason. By restricting such improper credit inquiries, Congress recognized the concrete harm that is caused by such inquiries. Just as § 1681b(b)(2)(A)'s disclosure requirement "creates a right to privacy" and results in "concrete injury" when violated, credit inquiries that exceed the scope of § 1681b(a)(3) —as alleged in the consolidated actions — invade a plaintiff's right to privacy and result in concrete harm, thereby satisfying Article III standing.[3]

---

[3]The Court finds Ocwen's arguments in their supplemental brief (*Marino*, ECF No. 62) to be unpersuasive. While the consolidated cases are not based directly on violations of the disclosure requirement under the FCRA, they *implicate* the disclosure requirement. As alleged, Ocwen failed to inform and gain consent to access Plaintiffs' credit reports after they had terminated their relationships with Ocwen.

Moreover, the Court is not persuaded by Ocwen's cited decision in *Bultemeyer v. CenturyLink, Inc.*, No. CV-14-02530-PHX-SPL (D. Ariz. Feb. 15, 2017). (*Marino*, ECF No. 62-1.) That case is factually distinguishable. In *Bultemeyer*, the plaintiff initiated a potential business relationship with the defendant, an internet services provider. She provided information to the defendant in order to acquire discounted internet services and in doing so accepted particular terms and conditions. The plaintiff, importantly, sought out a relationship with the defendant and consented to the conditions required to
*(fn. cont…)*

1

### D.    Standing to Assert Claim for Negligent Noncompliance with the FCRA

2       As noted, *Horton* is the only case that alleges an additional claim of negligent

3   noncompliance with the FCRA. (*Horton*, ECF No. 13 at 12.) In its Motion in *Horton*,

4   Ocwen argues that Horton's allegations amount to a "technical violation of the FCRA —

5   devoid of any particularized or plausible allegations of concrete harm — that solely

6   focuses on whether Ocwen's account review inquiries were permissible after Plaintiffs

7   received a discharge." (*Horton*, ECF No. 18 at 5.) Ocwen further points out that in

8   Horton's Amended Complaint, he describes actual damages as an unspecified invasion

9   of privacy "entitling [class members] to an award of actual damages in an amount to be

10  proved on a per pull basis" at trial. (*Horton*, ECF No. 13 at 12; *Horton*, ECF No. 18 at 6.)

11  Ocwen's argument overall is that reliance on statutory damages is insufficient to

12  establish a concrete injury for purposes of standing and that Horton needs to allege

13  actual, consequential damages resulting from the impermissible pulls in order to

14  establish injury-in-fact. (*Horton*, ECF No. 18 at 7.) Ocwen extends this argument to both

15  negligent noncompliance claims and willful noncompliance claims without any distinction

16  between the two and makes the argument in all four Motions.

17      However, negligent noncompliance is distinguishable from willful noncompliance

18  because the FCRA explicitly states that a successful consumer under a negligent

19  noncompliant claim may receive actual damages. On the other hand, the section of the

20  FCRA that addresses willful noncompliance presents two options: "any actual damages"

21  sustained or "statutory damages." *See* §1681n(a)(1). The statutory damage amounts are

22  different depending on whether the violation is willful[4] or whether it is done under false

23  pretenses. These distinctions are relevant for purposes of establishing injury-in-fact. For

24  _____

*(…fn. cont.)*

25  enter into that relationship, even though she subsequently changed her mind. In the
    consolidated cases, Plaintiffs terminated their relationships with Ocwen, revoking any

26  prior consent they had given Ocwen to access their credit reports. Thus, Plaintiffs had a
    reasonable expectation of privacy that they allege Ocwen violated.

27      [4]The Supreme Court has held that "willful" includes both actions taken in reckless
    disregard of statutory duty and those known to violate the FCRA. *Safeco Ins. Co. v. Burr*,

28  551 U.S. 47, 56-57 (2007).

1   example, in *Syed,* the Ninth Circuit distinguished between the requirement that a plaintiff

2   allege actual damages for claims of negligent noncompliance and the requirement that a

3   plaintiff allege only that her consumer credit information was intentionally obtained

4   without a permissible purpose for claims of willful noncompliance. *Syed*, 846 F.3d at

5   1038. Allegations of negligent noncompliance require a lower burden of proof regarding

6   scienter than willful noncompliance. The FCRA reflects this difference in requiring that

7   the lower burden of demonstrating negligent noncompliance be balanced by a showing

8   of actual damages. By contrast, because intentionally and impermissibly obtaining a

9   consumer's credit information requires a higher showing of scienter, willful

10  noncompliance claims, if proven, are harmful in and of themselves and something the

11  FCRA aims to deter. If Plaintiffs can demonstrate that Ocwen intentionally (or with false

12  pretenses) obtained their credit information without a permissible purpose, receiving

13  statutory damages acts as a deterrent to future violations. By contrast, if Ocwen

14  incorrectly thought it had a permissible purpose in obtaining Plaintiffs credit information,

15  then the appropriate penalty would be the harm that actually resulted to Plaintiffs. In

16  other words, you cannot deter actions that are not knowingly taken.

17      In sum, the Court finds that Plaintiffs have satisfied Article III's standing

18  requirements with respect to their claim for willful noncompliance under the FCRA. The

19  statute explicitly provides a statutory damage amount to quantify a harm that is often

20  unquantifiable: the harm to consumer privacy and confidentiality that results when a prior

21  lender continues to access a consumer's personal information without any genuine

22  reason for doing so. Plaintiffs in *Horton* have not demonstrated any actual damages to

23  meet the requirement of standing to assert a claim for negligent noncompliance with the

24  FCRA.

25  **IV.    CONCLUSION**

26      The Court notes that the parties made several arguments and cited to several

27  cases not discussed above. The Court has reviewed these arguments and cases and

28

11

determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is therefore ordered that Defendant's motions to dismiss in *Marino*, *Farrin*, and *Hardin* (*Marino*, ECF No. 23; *Farrin*, ECF No. 25; *Hardin*, ECF No. 27) are denied. Defendant's motion to dismiss in *Horton (Horton*, ECF No. 18) is granted only with respect to the negligent noncompliance claim. Horton may file an amended complaint within thirty (30) days of this order to cure the negligent noncompliance claim under § 1681o to the extent Horton can allege a concrete injury and/or actual damages sustained as a result of Ocwen's alleged negligent, impermissible pull of his credit report. Regardless of amendment, all other claims across all four cases will proceed.

It is further ordered that the three additional motions to supplement (*Marino*, ECF Nos. 54, 60, 63) are granted.

DATED THIS 3rd day of March 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE